UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLENN HAMM,                         :
                                    :CIVIL ACTION NO. 3:17-CV-958
          Plaintiff,                :
                                    :(JUDGE CONABOY)
          v.                        :
                                    :
NANCY A. BERRYHILL,                 :
Acting Commissioner of             :
Social Security,                    :
                                    :
          Defendant.                :
                                    :

---

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Acting
Commissioner's denial of Disability Insurance Benefits ("DIB")
under Title II of the Social Security Act. (Doc. 1.) Plaintiff
filed an application for benefits on March 23, 2014, alleging a
disability onset date of August 22, 2013, which he first amended to
September 18, 2013, and later amended to January 2, 2014. (R. 18.)
After he appealed the initial denial of the claim, Administrative
Law Judge ("ALJ") Scott Staller held a hearing on November 23,
2015. (*Id.*) With his Decision of January 19, 2016, the ALJ
determined that Plaintiff had not been under a disability as
defined in the Social Security Act from January 2, 2014, through
September 30, 2014, the date last insured. (R. 70-71.) Plaintiff
requested review of the Decision by the Appeals Council and the
Appeals Council denied review on May 4, 2017. (R. 1-6.) With the
Appeals Council denial, the ALJ's Decision became the decision of
the Acting Commissioner. (R. 1.)

Plaintiff filed this action on June 2, 2017. (Doc. 1.) In his supporting brief, Plaintiff asserts the ALJ erred on the following bases: 1) substantial evidence does not support the ALJ's step two evaluation; 2) substantial evidence does not support the ALJ's evaluation of opinion evidence; 3) the ALJ erred in his evaluation of Plaintiff's symptoms; and 4) the ALJ did not properly consider Plaintiff's obesity. (Doc. 12 at 1-2.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.

## **I. Background**

Plaintiff was born on January 2, 1964, and was fifty years old on the date last insured. (R. 31.) He has a high school education and past relevant work as a construction worker. (R. 30-31.) In a Disability Report dated March 24, 2014, Plaintiff identified the following conditions that limited his ability to work: two bulging discs in his lower back; bicep tear of his right shoulder; cyst in his left shoulder; meniscus tears in his right knee; nerve removal in his left foot; bone reconstruction in his left foot; arthritis in his spine, knees, ankles, and shoulders; disc damage in his neck; and depression. (R. 172.)

### *A. Medical Evidence*

Focusing on evidence relevant to the time period at issue-- January 2, 2014, through September 30, 2014--Plaintiff presents minimal evidence in his Summary of Impairments. (*See* Doc. 12 at 3-

7.)  The Court focuses on the evidence cited by Plaintiff, augmented as warranted by evidence cited by Defendant and independently determined to be significant.

## 1.  Physical Impairments

On April 5, 2013, Plaintiff underwent diagnostic arthroscopy with debridement of labrum as well as repair of superior labral attachment, debridement of undersurface of rotator cuff, followed by subacromial decompression.  (R. 263.)

From February 2013 through July 2013, Plaintiff treated with Vincent Rollo, M.D., at Carroll Health Group Orthopaedics for bilateral shoulder pain.  (R. 314-25.)  At his July 3, 2013, visit, Dr. Rollo recorded that three months postoperatively Plaintiff noted steady improvement with the right shoulder and believed he was about 90 percent but he still had some difficulty with overhead work and some tightness.  (R. 316.)  Plaintiff said that his left shoulder remained very painful with decreased motion.  (*Id.*)  At the time Plaintiff weighed 260 pounds and had a BMI of 32.53. (*Id.*) Dr. Rollo discussed arthroscopic evaluation and treatment of the left shoulder but Plaintiff stated he could not miss any more work at the time.  (*Id.*)

Plaintiff was treated by Terrence Calder, M.D., of Hillside Pain Management beginning in March 2013.  (R. 328.)  At his initial visit on March 12, 2013, Plaintiff presented with posterior thoracic aching, right shoulder muscle aching, right sided lumbar

3

aching, and right knee muscle aching. (*Id.*) His "Current Problem List" identified the following: sacroiliitis, degeneration of cervical intervertebral disc, degeneration of lumbar or lumbosacral intervertebral brachial neuritis or radiculitis, lumbago, radicular low back pain, and unspecified myalgia and myositis. (R. 329-30.) Physical examination findings included pain behaviors consistent within the expected context of disease; restricted movement in all directions; normal posture and intact gait; normal and symmetrical reflexes; negative straight leg raising; orientation to person, place, and general circumstances; and appropriate mood and affect. (R. 331.) Dr. Calder assessed Plaintiff with back pain, mainly axial in nature, and he planned to continue Plaintiff's treatment and see him again in three months. (R. 332.)

On April 23, 2013, Plaintiff complained that his right lower lumbar pain flared up about twelve days previously. (R. 333.) He also reported aching behind the knees, in his right shoulder, and in the mid thoracic area. (R. 333-34.) Physical examination showed restricted movement, muscle spasms in the lumbopelvic region and right multifidus, normal gait and posture, negative straight leg raising, normal mental status. (R. 337.) Dr. Calder administered a trigger point injection which he noted had been helped in the past. (*Id.*) Plaintiff presented similarly in June 2013 and was given another steroid injection after it was noted that Plaintiff reported good relief with the previous injection for

4

almost two months.  (R. 339-42.)

September 2013 office notes indicate that Plaintiff continued to have pain, he needed to have his shoulder replaced but he wanted to hold off as long as he could, and the right lower lumbar injections had helped him greatly.  (R. 344.)  Physical exam was similar to those previously recorded and Plaintiff received another injection.  (R. 348.)

On December 19, 2013, Dr. Calder noted that Plaintiff presented with complaints of right sided thoracic pain, right shoulder pain, right low back pain, and bilateral knee pain.  (R. 349.)  Plaintiff reported that he had no improvement with the injection he had at his previous appointment.  (*Id.*)  He continued to take Oxycontin, Oxycodone, and ipbuprofen for his pain and said he got some relief from using a heating pad.  (*Id.*)  Plaintiff also said that his pain was getting worse and it was hard to do any tasks.  (*Id.*)  Physical examination of the head/neck and shoulders showed moderate tenderness in the midline, and examination of the spine, ribs, and pelvis showed movement restricted in all directions, normal stability, and palpation caused pain at the right posterior superior iliac spine.  (R. 351.)  Plaintiff had muscle spasms in the lumbopelvic region, he had normal posture, gait, and reflexes, and the straight leg test was negative.  (*Id.*)  Dr. Calder found that Plaintiff was oriented to person, place, time and circumstances, and his mood and affect were appropriate.  (*Id.*)

After noting that pain medications helped but did not alleviate the pain, Dr. Calder adjusted the medication regimen and administered another trigger point injection.  (R. 352.)

In March 2014--Plaintiff's first visit with Dr. Calder after the January 2, 2014, alleged disability onset date--Plaintiff reported that the December injection had provided about fifty percent relief until a week before his office visit and he had been much worse since the injection wore off.  (R. 353.)  Dr. Calder noted that Plaintiff had ongoing back pain that was usually controlled with medications but he had flared in his right low back and base of his neck.  (R. 357.)  Dr. Calder added that Plaintiff used his medications as prescribed without side effects.  (*Id.*)  He administered another trigger point injection.  (*Id.*)

On September 17, 2014--Plaintiff's last office visit with Dr. Calder before the September 30, 2014, date last insured--Plaintiff reported fifty percent improvement for six weeks and told Dr. Calder that he knows when it is time to return for repeat trigger point injections.  (R. 420.)  Dr. Calder administered another injection.  (*Id.*)

In December 2014, Plaintiff presented with posterior lumbar pain, right knee pain, left foot pain, posterior thoracic pain, right shoulder pain, and right arm numbness.  (R. 420.)  He reported that his overall functioning, daily activities, mood, and work duties had declined since his September 2014 visit.  (*Id.*)

Musculoskeletal examination showed the following: Plaintiff had moderate tenderness in the midline of head/neck and shoulder girdle; spinal movement was restricted in all directions; he had normal strength and tone in all extremities; he had muscle spasms in various areas; he had a normal gait and normal posture; straight leg raising was negative; and he had normal orientation, mood, and affect. (R. 423-24.) Dr. Calder summarized Plaintiff's history, noting he had ongoing back pain, focal pain in the low back and right neck, injections had helped part of his low back pain, and lower back pain associated with degenerative disc disease was controlled with medications. (R. 424.) Dr. Calder planned to administer another trigger point injection and continue Plaintiff on oxycontin and oxycodone. (*Id.*)

In March 2015, Plaintiff again reported pain in multiple areas. (R. 406.) Plaintiff said he had good days and bad days with the pain and noted that his work duties and over-all functioning were worse and his daily activities, mood, relationships, and sleep patterns remained the same. (R. 406.) Plaintiff presented similarly in May but noted that he periodically had depressive symptoms and he had anxiety symptoms. (R. 540-42.) No problems were noted in his mental status examination. (R. 541-42.) Plaintiff reported the same mental health symptoms in July 2015 and said he continued with pain in multiple areas, he had just had surgery for a torn meniscus and was going to physical therapy,

his pain prevented him from doing 50-75% of his work/chores, and his work duties and overall functioning were worse. (R 559, 561.) Examination was similar to that recorded previously and Plaintiff received another trigger point injection. (R. 562-63.) Plaintiff reported continuing pain, mental health issues, and decreased function in August 2015 and received additional trigger point injections. (R. 569-73.)

## 2. **Mental Health Impairments**

In addition to Dr. Calder's notations beginning in May 2015 that Plaintiff reported periodic depressive and anxiety symptoms and the normal mental status evaluation findings throughout Dr. Calder's treatment of Plaintiff (*see*, *e.g.*, R. 540-42), notes from the Carroll Medical Group indicate Plaintiff had previously reported that he had a depression problem (*see*, *e.g.*, R. 375). October 2013 records note that Plaintiff wanted to discuss his depression. (R. 375.) He stated it was related to seasons and started in fall and wintertime. (*Id.*) He was started on medication for his "depression related to seasons." (*Id.*)

On December 31, 2013, Plaintiff reiterated the seasonal nature of his depression and said in the past he did not take medication in the summer. (R. 374.) The provider advised Plaintiff that it was important to take the medication all year because it built up the levels in the blood. (*Id.*)

On January 28, 2014--the first visit with this provider

following the January 2, 2014, alleged onset date--Plaintiff reported that he felt better but "not great." (R. 371.) Plaintiff told the provider that he had a lot of financial and health issues going on, he did not want to increase his Prozac dosage, he did not want to make a follow up appointment, and he would call if he had any problems. (*Id.*) Plaintiff also reported that he was in the family business and it was hard for him to work. (*Id.*)

On April 1, 2014, Plaintiff said he started to feel extremely anxious in the evening and the provider advised that a medication adjustment was indicated. (R. 370.)

Plaintiff did not see the provider again until September 25, 2014, at which time the provider indicated that he had increased Plaintiff's Prozac in April and Plaintiff rarely took Xanax for anxiety. (R. 436.) Plaintiff said the Prozac was working great but he felt he was slipping a little during the preceding month. (R. 436.) The provider increased Plaintiff's Prozac dosage, gave Plaintiff a prescription for Xanax to be used as needed, and discussed seasonal affective disorder including spending time in a brightly lit area. (R. 436.) This was the last visit with the provider before the September 30, 2014, date last insured.

In May 2015, Plaintiff reported that he felt good and the provider planned to continue his medication regimen. (R. 534.) In August 2015, Plaintiff presented with severe anxiety and wanted disability papers filled out. (R. 528.) The provider noted that

"[h]e is mostly on disability for physical things. He has a bad back, knee things and has had rotator cuff surgeries. He is extremely anxious." (*Id.*) Plaintiff said he rarely took the Xanax for anxiety because he did not like to take it often. (*Id.*) Plaintiff also said it was getting harder and harder for him to focus and concentrate but he was not depressed. (*Id.*) The provider adjusted Plaintiff's medication regimen. (*Id.*)

## B. Opinion Evidence

The only opinions issued during or close to the time period at issue are those of State agency reviewers, Richard W. Williams, Ph.D., and Candelaria Legaspi, M.D. (R. 81-88.) On April 30, 2014, Dr. Williams concluded that Plaintiff had the medically determinable impairment of Affective Disorders which was non severe. (R. 84.) He completed a Psychiatric Review Technique ("PRT") and found that Plaintiff had no restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration. (R. 85.)

On May 5, 2014, Dr. Legaspi completed a Physical Residual Functional Capacity Assessment. (R. 86-88.) She made the following findings: Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; he could stand and/or walk for about six hours in an eight-hour workday; he could sit for about

six hours in an eight-hour workday; his ability to push and/or pull
was not limited other than indicated for lift and/or carry; he
could frequently climb ranps/stairs and ladders/ropes/scaffolds; he
could frequently balance and stoop; he was unlimited in other
postural categories; he was limited in right overhead reaching; and
he was unlimited in handling, fingering, and feeling.  (R. 87-88.)

In her November 2015 opinions, Sarah Fratalli, M.D., opined
that Plaintiff had extensive physical and mental limitations which
would preclude him from performing even low stress jobs.  (*See*,
*e.g.*, R. 592, 602-04.)

## C. ALJ Decision

In his January 19, 2016, Decision, ALJ Staller concluded that
Plaintiff had the following severe impairments:  bilateral knee
osteoarthritis; shoulder impingement and status-post right shoulder
surgery; degenerative disc disease of the lumbar, thoracic, and
cervical spine; and obesity.  (R. 21.)  He also found that
Plaintiff had other medically determinable impairments including
mental impairments, characterized as depression and anxiety, which
were non-severe.  (*Id.*)  ALJ Staller explained the basis for this
determination, including his focus on evidence with respect to the
date last insured and assessments of the opinions of Dr. Williams
and Dr. Frattali.  (R. 22-23.)  The ALJ gave great weight to the
opinion of Dr. Williams and he did not accept Dr. Frattali's
assessment for several reasons including the fact that the form

opinion was completed over a year after the date last insured and it corresponded with treatment notes indicating greater symptoms after the relevant time period. (*Id.*)

After concluding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing (R. 24), ALJ Staller assessed Plaintiff to have the residual functional capacity ("RFC") for light work with limitations (R. 25). He found that Plaintiff could

> frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance. The claimant can occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead with both upper extremities, and he can frequently reach in all other directions with both upper extremities as well as frequently handling or fingering with both upper extremities.

(R. 25.)

In explaining his RFC, ALJ Staller provided several reasons for assigning little weight to Dr. Frattali's opinions regarding Plaintiff's physical capacity. (R. 29.) He also provided several reasons for assigning Dr. Legaspi's opinion great weight overall. (R. 28.)

The ALJ then found that Plaintiff was unable to perform his past relevant work but he was able to perform other jobs that existed in significant numbers in the national economy. (R. 30-32.) He therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act from January 2,

12

2014, through September 30, 2014.  (R. 32.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S.

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 31-32.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence

14

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d

16

Cir. 1983) (internal quotation omitted).  Where a claimed error
would not affect the outcome of a case, remand is not required.
*Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Finally,
an ALJ's decision can only be reviewed by a court based on the
evidence that was before the ALJ at the time he or she made his or
her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the ALJ erred on the
following bases: 1) substantial evidence does not support the ALJ's
step two evaluation; 2) substantial evidence does not support the
ALJ's evaluation of opinion evidence; 3) the ALJ  erred in his
evaluation of Plaintiff's symptoms; and 4) the ALJ did not properly
consider Plaintiff's obesity.  (Doc. 12 at 1-2.)

**A.    *Step Two***

Plaintiff first contends ALJ Staller erred in finding
Plaintiff's depression and anxiety to be non-severe impairments.
(Doc. 12 at 8.)  Defendant maintains the ALJ properly concluded
they were non-severe based on their short-term or seasonal nature
and the treating physician assessments.  (Doc. 13 at 12-13.)  The
Court concludes Plaintiff has not satisfied his burden of showing
error on the basis alleged.

An impairment is not severe if it does not significantly limit
the ability to do basic work activities.  20 C.F.R. § 404.1522.
Thus, the mere existence of a diagnosis does not establish severity

17

because the central consideration is the functional limitation caused by the impairment. *See*, *e.g.*, *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In support of his argument that ALJ Staller erred in finding his anxiety and depression to be non-severe, Plaintiff does not present an accurate review of the basis for ALJ Staller's findings contained in the Decisions's extensive analysis. (*See* Doc. 12 at 10-11; R. 21-24.) Moreover, Plaintiff does not point to any evidence of record in either his supporting brief or reply brief related to his mental health impairments before the date last insured. (*See* Doc. 12 at 4, 8-12; Doc. 14 at 1-4.) Therefore, Plaintiff has not met his burden of showing error.[2]

## B.    *Opinion Evidence*

Plaintiff next asserts substantial evidence does not support the ALJ's evaluation of opinion evidence provided by Dr. Frattali and Dr. Legaspi. (Doc. 12 at 12-16.) Defendant responds that the ALJ's evaluation of Dr. Fratalli's opinions is supported by substantial evidence. (Doc. 13 at 17.) The Court concludes Plaintiff has not satisfied his burden of showing error on the basis alleged.

Plaintiff is correct that a treating physician's opinion is

---

[2]    Plaintiff's assertion that limitations in concentration, persistence or pace should have been addressed in the RFC even with the non-severe finding (Doc. 12 at 11; Doc. 14 at 2) is not a step two consideration and will be discussed later in the text.

entitled to controlling weight when it is well supported and consistent with substantial evidence in the record. (Doc. 12 at 12 (citing 20 C.F.R. § 404.1527(c)(2); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).) He is also correct that *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001), requires the ALJ to consider all relevant evidence at step four. (Doc. 12 at 13 (citing *Fargnoli*, 247 F.3d at 41).) However, neither *Fargnoli* nor the regulation requires the ALJ to consider *all* evidence of record-- *relevancy* is the key consideration.

In this section of his brief, Plaintiff discusses Dr. Frattali's opinions about Plaintiff's physical impairments. (Doc. 12 at 13-16.) He states that Dr. Frattali's opinions are supported by "restricted movement of the spine, pain at the right posterior, superior iliac spine with palpation and moderate tenderness in the midline." (Doc. 12 at 13 (citing R. 331, 336, 342, 351, 356).) Plaintiff does not elaborate how these records from Dr. Calder support Dr. Frattali's opinions. (Doc. 12 at 13.) He merely asserts that "if the ALJ had any doubt regarding the basis for Dr. Frattali's opinions, he should have requested a clarification from Dr. Frattali regarding Hamm's residual functional capacity." (Doc. 12 at 14 (citations omitted).)

ALJ Staller agreed that objective evidence supported the conclusion that Plaintiff had severe impairments as well as pain, tenderness, muscle spasms, and limited range of motion. (R. 26-27

(citations omitted).)  However, he explained several reasons why he found Dr. Frattali's opinions were entitled to little weight.  He began by noting that Dr. Fratalli

> essentially suggested that, since 2003, the claimant has had a number of catastrophic limitations, including the inability to sit, stand, or walk in any combination on a full-time basis, only marginal use of his neck, arms, hands, and fingers, and a need to be absent almost 1 workweek per month (*See* 19F; 20F (reiterating as well several suggested mental impairments, which are rejected for the reasons discussed earlier)).
>
> The undersigned acknowledges that Dr. Frattali is a long-term source.  This relationship affords advantages, such as longitudinal perspective, that generally merit significant deference.
>
> However, as was also the case with respect to this provider's unpersuasive mental capacity assessment, other factors in the record heavily weigh against the credibility of this opinion.  Most obviously, the claimant's own actions have demonstrated that this opinion is grossly inaccurate. Whereas Dr. Frattali said that theh claimant had been this limited since 2003 (*see* 19F/5), the record shows that he was not only working at that time, but he was sustaining highly demanding full-time work, both that year and over many subsequent years (*See e.g.* 5D/3) noting earnings of over $26,000 in 2003, with even higher subsequent earings); 2E/2 (explaining in great detail how exertionally and non-exertionally difficult his work was).  *Cf.* 18E; Hearing Testimony (suggesting lesser exertion, but nonetheless acknowledging far greater past abilities)).
>
> Even setting this issue aside, however, the overall record is not consistent with the nature or degree of limitations suggested in these opinion forms, which were filled out

20

> well over a year after the date last insured.
> As discussed above, the claimant's objective
> clinical signs and treatment modalities,
> including Dr. Fratalli herself, are far more
> conservative than one would expect given
> anywhere near the level of impairment
> suggested (*See e.g.* 4F/22, 26 (including
> normal and painless neck range of motion, 31
> (including normal gait; 8F/5, 20; 9F/7
> (noting "controlled" back pain). *Cf.* 16F
> (repeatedly alleging worsening over time)).
> This inconsistency suggests heavy reliance on
> unsupported subjective allegations. It also
> shows an incomplete understanding of the
> claimant's longitudinal history, particularly
> as it relates to the nature and chronology of
> his work and impairments. Accordingly,
> beyond generally supporting physical
> "severity" and a residual functional capacity
> no greater than that found above, this
> opinion evidence is not persuasive.

(R. 29.)

Other than setting out the citations to the record noted above as evidence that clinical findings supported the opinion, Plaintiff does not meaningfully take issue with the assessment itself. The Plaintiff cannot meet his burden of showing error with conclusory statements regarding clinical findings, the ALJ's duty to seek clarification about the basis of an opinion, the relevance of evidence which bears upon an onset date, and the weight assigned a State agency medical consultant.[3] (*See* Doc. 12 at 13-15; Doc. 14

---

[3] First, Plaintiff's criticism of ALJ Staller's consideration of Dr. Legaspi's opinion is not developed as a separate issue but as a reason the ALJ erred in his evaluation of Dr. Fratalli's opinions. (*See* Doc. 12 at 15.)

Second, in his reply brief, Plaintiff additionally criticizes certain statements made in Defendant's reply brief. (Doc. 14 at 5-

at 4-6.)  Finally, a mere assertion that substantial evidence does not support the ALJ's evaluation of the medical opinion at issue (Doc. 12 at 16) is unavailing, particularly where the ALJ provides a detailed rationale for his assessment.[4]  For all of these reasons, Plaintiff has not met his burden of showing that remand is required for further evaluation of Dr. Fratalli's opinion.

## C.     *Symptom Evaluation*

Plaintiff asserts error on the basis that ALJ Staller improperly assessed his symptoms.  (Doc. 12 at 16-20.)  Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints.  (Doc. 13 at 19.)  The Court concludes Plaintiff has not shown the alleged error is cause for reversal or remand.

In support of the claimed error, Plaintiff contends the ALJ's citation to his heavy work near the onset day should not have been used to discredit him, he improperly noted that Plaintiff's allegations were not supported by objective evidence, he did not consider that pain and psychological symptoms may exacerbate one another, he noted medication had been generally effective in alleviating symptoms, he failed to state that having an improved

---

6.)  The Court does not rely on these statements in deciding whether the ALJ's assessment of opinions was supported by substantial evidence and, therefore, further discussion of the allegations is not warranted.

[4]  Plaintiff concludes that "substantial evidence does not support the ALJ's evaluation of *Dr. Garg's* opinion."  (Doc. 12 at 16.)  No opinion from Dr. Garg is found in this record.

condition does not mean the claimant is not disabled, and he failed to conduct a proper pain analysis. (Doc. 12 at 17-19.)

In general, Plaintiff does not acknowledge that the ALJ relied on multiple factors in assessing Plaintiff's residual functional capacity, many of which are not mentioned in Plaintiff's supporting or reply briefs. (*See* R. 26-30; Docs. 12, 14.) A review of Plaintiff's limited discussion of many of the issues raised in support of this claimed error indicates he has not met his burden of showing that the ALJ's symptom evaluation is cause for reversal or remand.

First, Plaintiff's criticism regarding heavy work (Doc. 12 at 17) is only one portion of the ALJ's consideration of Plaintiff's work history and the implications of Plaintiff's reports about it. For example, the ALJ noted a discrepancy concerning Plaintiff's income records, various reports about the exertional level of recently performed work, and the fact that "the vast majority of the records . . . fall either during periods when he was performing demanding work, or after his date last insured . . . suggest[ing] both a lesser degree of impairment as of the date last insured and worsening after this date." (R. 27.)

Second, the ALJ did not find that Plaintiff's allegations were not supported by objective evidence (*see* Doc. 12 at 18), but rather found that some allegations were objectively supported (*see* R. 26-27). In support of this assertion of error, Plaintiff posits that

"an ALJ may not discredit testimony of a claimant's symptoms solely because there is no medical evidence to support it." (Doc. 12 at 18 (citing SSR 96-7p, at *1).) Plaintiff does not expand upon his conclusory assertion--he does not show how the ALJ ran afoul of the SSR 96-7p directive. Further, any attempt to do so would be unavailing in that ALJ Staller's explication provided multiple bases for his assessment--he did not discredit symptoms *solely* because of a lack of medical evidence. (*See* R. 27-28).

Third, Plaintiff contends that his criticism regarding the ALJ's failure to consider the overlay of his physical and mental impairments is relevant because Dr. Frattali opined that his depression and anxiety affected his physical condition. (Doc. 12 at 18.) Because the Court has concluded Plaintiff has not shown that ALJ Staller's assessments of Dr. Frattali's opinions are not supported by substantial evidence, reliance on these opinions in the context presented here does not provide the suggested support. Interestingly, Plaintiff never reviews records generated from the alleged onset date through the date last insured which address his mental health issues. (*See* Docs. 12, 14.)

Fourth, Plaintiff's criticism of the ALJ's statement regarding the effectiveness of medication (Doc. 12 at 18) does not support the claimed error. Plaintiff does not dispute the veracity of the ALJ's statement that "Terrence Clader, M.D., a treating pain management specialist, indicated that around the date last insured,

the claimant's pain medication had generally been effective in alleviating, if not controlling the claimant's pain symptoms." (R. 28 (citing Ex. 9F/7).) Although Plaintiff finds fault with the ALJ's failure to "note that having an improved condition does not mean that the claimant is not disabled," (*id.* (citing *Morales*, 225 F.3d at 319)), he cites no authority to support the proposition that the ALJ was required to make such a notation. Importantly, the ALJ did not support his determination that Plaintiff was not disabled during the relevant time period on this statement alone nor does Plaintiff show that the ALJ relied too heavily on this one factor.

Finally, Plaintiff maintains the ALJ failed to conduct a proper pain analysis. (Doc. 12 at 19.) The only specific example provided is that ALJ Staller did not discuss the side effects of medications identified by Dr. Frattali. (Doc. 12 at 19 (citing R. 78, 591).) The example provided does not support the general assertion in that, as noted above, Plaintiff has not shown error in the ALJ's discounting of Dr. Frattali's opinion. Furthermore, in March 2014 (during the relevant time period) Dr. Calder opined Plaintiff used his medications as prescribed without side effects. (R. 357.)

In sum, the foregoing discussion shows that Plaintiff has not shown that his asserted criticisms of the ALJ's consideration of his symptoms demonstrate error when considered individually and are

further undermined by the fact that the ALJ presented numerous reasons for his RFC assessment which Plaintiff does not dispute. Therefore, Plaintiff has not shown that the asserted error is cause for reversal or remand.

## D. *Obesity and Other RFC Considerations*

### 1. Obesity

Finally, Plaintiff alleges the ALJ did not properly consider his obesity in combination with his other impairments. (Doc. 12 at 20.) Defendant responds that the claimed error is without merit in that the ALJ sufficiently considered obesity as evidenced by the facts that he found it to be a severe impairment and discussed it throughout his decision. (Doc. 13 at 24-25.) The Court concludes Plaintiff has not shown that the alleged error is cause for reversal or remand.

With this argument, Plaintiff does not point to specific functional limitations resulting from his obesity. As noted by Defendant, generic assertions are not enough in that relevant authority provides that "'[w]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.'" (Doc. 13 at 25 (quoting SSR 02-01p, 2000 WL 628049, at *6; citing *McDermott v. Colvin*, No. 15-984, 2016 WL 7007558, at *8 (M.D. Pa. Nov. 7, 2016)).) Although Plaintiff criticizes Defendant's response, he does not provide specifics about the functional effects of his obesity but rather generally references a

potential impact of obesity on Plaintiff's back and knee impairments and SSR 02-01p's warning "that the effect of obesity can be exacerbated with certain conditions, including joint related impairments." (Doc. 14 at 9-10.)  Given ALJ Staller's discussion of obesity in his explanation for the RFC assessment and his specific notation that obesity was accounted for in the RFC finding (R. 28), Plaintiff's conclusory assertions do not satisfy his burden of showing error on the basis alleged.

## 2.   Anxiety and Depression

Plaintiff contends in his step two discussion that the ALJ found that his non-sever medically determinable impairments of anxiety and depression caused mild limitations in concentration, persistence, or pace but the ALJ did not include any related limits in his RFC assessment.  (Doc. 12 at 10 (citing R. 21-23).) In his supporting brief, Plaintiff cites no authority for the proposition that it is error for the ALJ not to include such limitations in his RFC.  (*See* Doc. 12 at 10-11.)  In his reply brief, Plaintiff cites cases from the Northern District of Illinois and the Northern District of Indiana in support of his assertion that the claimed error is cause for remand.  (Doc. 14 at 2 (citing *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *Koswenda v. Astrue*, No. 08C4732, 2009 WL 958542, at *5 (N.D. Ill Apr. 2, 2009); *Paar v. Astrue*, No. 09C5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012); *Winfield v. Comm'r of Soc. Sec.*, No.

2:11-cv-432, 2013 WL 692408, at *4-5 (N.D. Ind. Feb. 25, 2013)).)

The Court rejects Plaintiff's averment that the cases support remand in the circumstances presented here. First, each of the cases is distinguishable: in *Alesia*, the plaintiff's non-severe depression resulted in mild limitations in *three* categories-- activities of daily living, social functioning as well as concentration, persistence or pace, and the plaintiff's past work was skilled,[5] 789 F. Supp. 2d at 933-34; in *Koswenda*, the plaintiff had the *severe* impairments of personality disorder and affective mood disorder at step two and these were the only severe impairments identified, 2009 WL 958542, at *3; in *Paar*, the plaintiff was found to have mild limitations in *three* categories-- activities of daily living, social functioning as well as concentration, persistence or pace, 2012 WL 123596, at *13; and in *Winfield*, although the ALJ found that the plaintiff had mild limitations in the three broad categories identified above, she had "moderate" symptoms or difficulties by other measures, 2013 WL 692408, at *4. Second, ALJ Staller noted that his finding of mild limitations in the area of concentration, persistence, or pace was based not on objective evidence during the relevant time period but on his decision to generally afford Plaintiff "some benefit of the doubt given the impact of chronic pain." (R. 23.) Third,

---

[5] Plaintiff's past relevant work was unskilled and the VE was asked to consider a hypothetical individual with Plaintiff's work experience. (R. 74, 75.)

Plaintiff's attorney was given an opportunity to question the vocational expert ("VE") at the November 23, 2015, hearing, and his attorney did not include any mental health consideration in any of her questions to the VE. (*See* R. 74-79.) Fourth, the ALJ provided an extensive explanation for the basis for his RFC assessment and, as dicsused previously, Plaintiff has not shown that his determination was not based on substantial evidence. Therefore, the Court concludes Plaintiff has not shown that the ALJ's failure to specifically account for mild limitations in concentration, persistence, or pace is cause for remand.

## V. Conclusion

For the reasons discussed above, the Court concludes that Plaintiff's appeal of the Acting Commissioner's decision is properly denied. An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: January 8, 2018